IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAMON D. SMITH, et al.,

      Plaintiffs,

v.                        Case No. 20-2500-JTM-TJJ

COMMERCIAL BANK, et al.,

      Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on several motions: a Motion to Dismiss filed by defendants Commercial Bank, Lori Brake, Mark Helt, and Lori A. Nolting (the "Commercial Bank defendants") (Dkt. 18); a Motion in Support of Motion to Dismiss (Dkt. 25) filed by defendant Patricia Wary; and a Motion for Judgment on the Pleadings (Dkt. 32) filed by defendant Wary. Plaintiffs Damon and Tonia Smith have filed responsive pleadings opposing each of the above motions. (Dkts. 22, 28, 34).[1] In addition, plaintiffs have filed a Motion for Preliminary Injunction. (Dkt. 35).

I.     <u>Factual Background</u>

---

[1] Plaintiffs also filed a document entitled "Memorandum and Rebuttal to Defendants' Reply to Plaintiff's Response to Motion by Defendants Lori Brake, Commercial Bank, Mark Helt, Lori A. Nolting re: [18] Motion to Dismiss for Failure to State a Claim" (Dkt. 24), which is a surreply to the Commercial Bank defendants' Motion to Dismiss (Dkt. 18). Surreplies are not allowed under this Court's procedural rules without permission of the court, which is typically reserved for situations where a party requests the right to respond to new allegations made in a reply brief. The court has reviewed plaintiffs' surreply and determined that the arguments advanced therein are merely reiterations of arguments that were previously made or could have been made in their response in opposition to defendants' motion to dismiss. Consequently, the court disregards the surreply (Dkt. 24).

Plaintiffs Damon and Tonia Smith are individuals residing in Oswego, Kansas. Defendant Commercial Bank is a business headquartered in Parsons, Kansas, with a branch office in Oswego. Defendant Lori Brake is an employee of Commercial Bank in its Oswego office. Defendant Mark Helt is the Oswego branch manager. Defendant Lori Nolting is an assistant vice president of Commercial Bank in Parsons. Defendant Patricia Wary is an individual who resides in Oswego. Defendant Wary had a mortgage loan with Commercial Bank and entered into a residential real estate transaction with plaintiffs, which forms the basis of plaintiffs' Complaint.

For purposes of this Memorandum and Order, the court accepts as true the following material factual allegations of plaintiffs' Complaint. Plaintiffs, a "couple of color," met defendant Wary in September 2016 when they toured a home she had listed for sale by owner in Oswego, Kansas. Plaintiff Tonia Smith was born and raised in Oswego, her family has lived there for over 150 years, and plaintiffs had recently moved to Oswego from Colorado to care for Mrs. Smith's terminally ill father. Plaintiffs initially declined to make an offer on the house; however, after Wary contacted them several times they agreed to meet with her in October 2016.[2] During that meeting, Wary expressed to plaintiffs that she feared losing the home to foreclosure, and plaintiffs agreed to purchase the home by "private contract." The contract terms stipulated "the purchase terms must

---

[2] Although Plaintiffs' Complaint lists the relevant date as October 15, 2020 (Dkt. 1, p. 2), the court infers from the remainder of the Complaint's allegations that the date on which plaintiffs met Wary to discuss purchase of the home was approximately October 15, 2016.

be as beneficial to the plaintiff/s as would be to the defendant, as the plaintiff/s had no other incentive or reason to buy the defendant's home."[3] Plaintiffs agreed to pay Wary's mortgage, including escrowed taxes and insurance, until they were able to refinance and obtain their own mortgage on the home. No contract is attached to the Complaint, but plaintiffs contend "[n]o time period was contractually specified as it could not be known."

Plaintiffs and Wary signed a Real Estate Sales Contract on November 28, 2016, which plaintiffs filed with the county. At that point, plaintiffs took "title and deed of the property," while Wary remained the responsible party on the mortgage. Wary owned a homeowners policy on the property with Upland Insurance Company through Commercial Insurance Brokerage, which similarly remained in Wary's name.

Wary told plaintiffs that Commercial Bank had full knowledge of the arrangement. On the date the agreement was signed Commercial Bank was contacted by Realty, Inc., a title company, and informed of the transfer of title and deed to the property from Wary to plaintiffs. Commercial Bank did not indicate it had any objection to the arrangement.

Plaintiffs immediately began paying Wary's mortgage, including the late October 2016 payment. Plaintiffs also directly gave Wary a "down payment" of $10,000. Wary continued to live in the home through the months of November and December 2016,

---

[3] Plaintiffs use "/s" throughout their pleadings to denote the plural form of a word; for purposes of this Memorandum and Order, the court maintains plaintiffs' usage.

while defendants made the $888 mortgage payments. Plaintiffs moved into the property on January 1, 2017.

From October 2016 until the home was refinanced in July 2020, plaintiffs never missed a payment to either Wary or Commercial Bank, never made a payment late, and never attempted to breach the agreement with Wary. Plaintiffs had a "caring relationship" with Wary from late 2016 through 2018 where they checked on her, made themselves available to her, and brought her meals. Commercial Bank accepted and cashed plaintiffs' monthly check payments to Wary in the exact amount of the Mortgage and escrow adjustments; the memo line on each check noted the payments were made for the purpose of paying Wary's mortgage.

In January 2019 plaintiffs asked Wary to file an insurance claim on their behalf after a significant hailstorm damaged the roof of the home. Wary did so, but the resulting settlement was insufficient to replace the roof. Plaintiffs consequently asked Wary to hold the settlement check until the claim could be disputed with the insurance company.

Around July 24, 2019, plaintiffs contend that Mr. Smith had a discussion with Wary that annoyed her, and that Wary escalated the disagreement by expressing dissatisfaction with the Real Estate Contract and telling Smith that plaintiffs should have had their mortgage refinanced by now. Wary then threated to call the police and report harassment, knowing the claim to be untrue. Mr. Smith left peacefully, but Wary later called police to report harassment. Mr. Smith also filed a report with police, and spoke with the Chief of Police. He was told Wary's story was "unconvincing," and that police had taken "no official report" from Wary.

On the same date, Wary made a "belligerent" phone call to Mr. Smith informing him that she'd contacted Commercial Bank and Realty, Inc. to report that plaintiffs were being dishonest with the real estate contract. Plaintiffs contend Wary then repeated these untrue allegations, including the false claim of harassment, to her employer, G&W Foods[4] and to her attorney.  Plaintiffs contend those actions were "threatening and the beginning of a malicious slander and defamation campaign involving Commercial Bank … and other businesses in the community to intimidate the plaintiff/s."

After this incident, plaintiffs' monthly payments to Wary were accepted directly by Commercial Bank and deposited by Commercial Bank, rather than plaintiffs providing those checks to defendant Wary.

Around July 28, 2019, plaintiffs received a "threatening letter" from Wary's attorney with accusations of harassment directed at them; the letter directed plaintiffs only to contact Wary in writing, and to obtain her permission before shopping at G&W Foods, her employer and the only grocery store in Oswego.[5] Plaintiffs noted that while Wary was on duty, she would "flee" to the back of the store when plaintiffs shopped at G&W foods, "intentionally trying to give her managers, co-workers, and any onlookers

---

[4] Plaintiffs have filed a separate suit against G&W Foods and Wary in this court, case no. 20-2517-JAR-TJJ, currently pending in front of Chief Judge Julie Robinson. The cases have been consolidated for purposes of discovery only. Chief Judge Robinson granted defendant G&W Foods' motion to dismiss on April 20, 2021.

[5] The letter in question was not attached to the Complaint, but plaintiffs did attach it to their opposition to Wary's Motion in Support of Defendants' Motion to Dismiss. (*See* Dkt. 25-1). The letter advises plaintiffs to "cease and desist all contact with [Wary] that does not pertain to the real estate contract," and directs that Wary "is not to be contacted by text message or by showing up to her work or home without [her] express permission."

the impression that she was indeed being harassed by plaintiff Mr. Smith, a 6'4" black man." Plaintiffs contend these actions have continued through October 2020. On July 31, 2019, plaintiffs sent letters to Wary and her attorney demanding that they cease and desist and informing them that their actions invoked racial animosity and endangered plaintiffs and their family.

On August 15, 2019, plaintiffs sent a letter by certified mail to Wary "giving her the option to release the insurance settlement from 01/2019 to the plaintiff/s or repair the roof." Wary responded that she had spoken with Lori Brake at Commercial Bank, and advised that she would not release the insurance settlement or fix the roof until the home had been refinanced. Over the next year, Wary continued to repeat that defendant Brake had advised her not to release the funds or fix the roof until the home was refinanced. Wary never acknowledged that she had "cashed" the insurance proceeds.

In September 2019, plaintiffs contacted an insurance agent at Commercial Insurance, explaining that Wary had kept the January 2019 insurance settlement. The agent added plaintiffs to Wary's insurance policy, but "mistakenly" identified plaintiffs as renters, rather than owners of the property.

Plaintiffs began the refinancing process in March 2020, and ultimately obtained their own mortgage on the home on July 13, 2020. Financing on the new loan was provided by Guaranteed Rate, and closing occurred at Ravensbrook Title Company. Wary inadvertently provided plaintiffs with transaction information after this closing that detailed "payoff amounts," "payoff overages" in the amount of $964.92, and "pre-paid escrow refunds" in the amount of $1,354.62. Plaintiffs contend those sums did not

belong to Wary and should have been released to plaintiffs or their lender, but were improperly deposited by Commercial Bank into Wary's personal account.

On July 10, 2020, plaintiffs sought assistance from Wary and Commercial Bank to provide payoff information to their lender, Guaranteed Rate, in advance of the loan closing. Plaintiffs contend that Brake publicly demeaned, humiliated, and berated Mr. Smith in front of other Commercial Bank staff, "defiantly" stating that she had previously provided payoff information to Gemini Mortgage and that payoff information would not be provided to Smith. She then told Smith that she had called Realty Inc. the day before to inquire as to whether plaintiffs had a closing schedule, and was informed that there was none – implying in front of Commercial Bank employees that plaintiffs were lying. Similarly, Brake informed Wary that no closing was scheduled at Realty Inc. Plaintiff Smith explained to Brake that he had shopped multiple mortgage and title companies and that neither Gemini nor Realty Inc. were selected. Brake asked what title company plaintiffs were using, but they refused to provide that information to Brake. On that same date, plaintiff Tonia Smith called Commercial Bank's corporate office and spoke with defendant Nolting. Smith informed Nolting that Brake's conduct was slanderous and humiliating.

Before the closing, on July 11, 2020 a microburst hit Oswego causing significant damage the property, including $16,000 of damage to the roof. Plaintiffs filed an insurance claim for these damages around July 12, 2020. Upland Insurance denied the claim on the basis that the January 2019 insurance settlement had been paid and the money accepted, but not used to repair the roof.  Plaintiffs then had to add a "roof rider"

to their new insurance policy on the home to continue to qualify for refinancing, which doubled their annual insurance premium.

On July 18, 2020, Wary provided plaintiffs with a cashier's check from Commercial Bank in the exact amount of the January 2019 insurance settlement.

Plaintiffs opened a new checking account at the Parsons, Kansas branch of Commercial Bank on August 19, 2020. At that time they complained to the manager of the Oswego branch, Mark Helt, and explained they had opened an account in Parsons because they felt the distrust and mistreatment they had received from employees of the Oswego branch was based on prejudice. Helt indicated he would investigate the matter and respond to plaintiffs, but no response was ever received.

Plaintiffs "are uncomfortable trusting or conducting any banking business with Commercial Bank in Oswego, KS due to public humiliation, slander, discrimination, and ongoing actions of the defendant/s to financially harm the plaintiff/s over the last year, continuing to date, for no other reason that can be concluded except the color of their skin." Plaintiffs contend during one transaction with Commercial Bank an unidentified teller appeared to be recording Mr. Smith with her cell phone, making him uncomfortable. Plaintiffs have also noticed "increased tensions" at other businesses in Oswego, along with "trolling" of their home by vehicles waving confederate flags, taking pictures, yelling obscenities, or spitting, which plaintiffs attribute to the conduct of defendants beginning in July 2019.

II.   <u>Analysis</u>

8

A.   *Defendant Wary's Motion for Judgment on the Pleadings*

Wary filed an Answer to the Complaint on October 26, 2020 (Dkt. 4). Under Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings "after the pleadings are closed." In an action with multiple defendants, the pleadings are not "closed" until all defendants have filed an answer, even where a defendant has elected to file a motion to dismiss instead. *Gorenc v. Klaassen*, No. 18-2403-DDC-JPO, 2019 WL 2523566 at *2 (D. Kan. June 19, 2019) (quoting *Garvey v. Seterus, Inc.*, No. 5:16-cv-00209-RLV, 2017 WL 2722307 at *12 (W.D.N.C. June 23, 2017)). In this case, Wary filed an Answer while the Commercial Bank defendants filed a Motion to Dismiss. Consequently a ruling on the merits of Wary's Motion for Judgment on the Pleadings would be premature.[6] Wary's Motion for Judgment on the Pleadings (Dkt. 32) is therefore DENIED.

B.   *Defendant Wary's Memorandum in Support of Motion to Dismiss*

Defendant Wary filed a Motion in Support of Defendant Commercial Bank's Motion to Dismiss (Dkt. 25), attempting to join in the Commercial Bank defendants' Motion to Dismiss (Dkt. 19). The court cannot construe Wary's pleading as a motion to dismiss or rule on its merits, because Wary filed an Answer in this matter. (*See* Dkt. 4). A party may choose to file an answer or a motion to dismiss, but not both. *See* Fed. R. Civ. P. 12(b). At most, the court considers the statements in Wary's Motion to be suggestions

---

[6] The court's decision mirrors Chief Judge Robinson's decision in the related case, 20-2517-JAR-TJJ, finding that defendant Wary's motion for judgment on the pleadings was premature.

in support of Commercial Bank defendants' Motion to Dismiss, but it does not find those suggestions or plaintiffs' arguments in response to be dispositive of its opinion.

C.    *The Commercial Bank Defendants' Motion to Dismiss*

The Commercial Bank defendants argue that plaintiffs fail to state a claim upon which relief can be granted, and argue the Complaint should be dismissed pursuant to Fed. R. Civ. P. 8(a)(2) and 12(b)(6). Plaintiffs bring nine counts in their Complaint, but fail to concretely specify which counts are directed at which defendants. Despite the fact that plaintiffs are pro se and may be held to more lenient pleading standards, the court will not read allegations into the Complaint that do not exist. *See Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Even as pro se parties, plaintiffs are responsible for alleging sufficient facts to form a recognizable legal claim. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018) (quoting *Hall*, 935 F.2d at 1110). The court cannot and will not provide "additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney*, 1113 F.3d at 1174 (citing *Hall*, 935 F.2d at 1110). Consequently the court construes the allegations in the Complaint as being brought only against those defendants specifically named in each count of the Complaint.

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it must include "enough facts to state a clam to relief that is plausible on its face," and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1216, at

235-36 (3d ed. 2004)). The court must accept the allegations of the non-moving party as true and must not dismiss on the grounds that it appears unlikely the party could actually prove the allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The court does not, however, have to accept as true any allegations of the complaint that are merely legal conclusions. *Id.*

Under those guidelines, the court engages in a two-step process to determine whether a complaint survives a Rule 12(b)(6) motion to dismiss. First, the court determines if the allegations in the complaint are factual and entitled to be accepted as true, or whether they are legal conclusions that are not entitled to the same treatment. *Id.* at 678-79. Next, the court determines whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

*Count 1 – Professional Negligence*

Plaintiff's Count 1 alleges that Commercial Bank committed "professional negligence"[7] when it released the January 2019 insurance proceeds to Wary, provided misleading information to the insurance company regarding those proceeds, colluded with Wary to withhold refunds of overages after the closing of the plaintiffs' loan, and

---

[7] Plaintiffs reference Kan. Stat. Ann. §60-258a, Kansas's comparative negligence statute, in support of Count 1. That statute generally provides that a plaintiff's contributory negligence does not prevent a plaintiff from recovering damages for negligence resulting in death, personal injury, property damage or economic loss, but may reduce a plaintiff's recovery by an amount in proportion to the amount of negligence attributable to plaintiff. Because defendants have not made any claim of contributory fault on plaintiffs' part, the comparative negligence statute is inapplicable to resolution of defendants' Motion to Dismiss.

otherwise improperly handled the January 2019 insurance proceeds and settlement refunds at the time of closing. (Dkt. 1, p. 9).

Under Kansas law,[8] negligence is defined as "the lack of ordinary care," or "the failure of a person to do something that a reasonably careful person would do, or the act of a person in doing something that a reasonably careful person would not do, measured by all circumstances then existing." *Danaher v. Wild Oats Markets, Inc.*, 2011 WL 1313309 at *3 (D. Kan. March 9, 2011) (quoting *Elstun v. Spangles, Inc.*, 289 Kan. 754, 756, 217 P.3d 450 (2009) (quotation marks omitted)). The plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. *Id.* The existence of a duty of care is a question of law for the court's determination. *Id.*

Here, plaintiffs allege that Commercial Bank breached a professional duty of care. "'A professional act or service, for purposes of a professional negligence action, is one arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual rather than physical or manual.'" *Id.* (quoting 65 C.J.S. *Negligence* § 160 (2011)). There are no allegations in plaintiffs' complaint that identify why a different standard of

---

[8] Plaintiffs bring this case in federal court under the court's original jurisdiction to address questions of federal law; counts 6 and 7 of plaintiffs' Complaint allege violations of federal law. The remainder of plaintiffs' claims involve claims arising under state law, over which the court exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Federal courts apply state substantive law to claims brought under their supplemental jurisdiction. *See United Mine Workers of American v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966). Consequently, this court applies Kansas substantive law to plaintiffs' non-federal claims.

care beyond that owed by an ordinary person would apply to Commercial Bank, nor do plaintiffs identify precisely what that standard of care would be.

And, regardless of whether Commercial Bank was held to a "professional" or ordinary standard of care, plaintiffs fail to identify how exactly Commercial Bank breached a duty owed *to plaintiffs*. Defendant Wary had a contractual relationship with Commercial Bank through the mortgage on the property, and a contractual relationship with the insurance company that provided her homeowners' policy (who is not named as a defendant). Although plaintiffs may have given Wary money to pay her monthly mortgage payments and insurance premium, the fact remains that both the mortgage and insurance policy remained in Wary's name. Consequently, Wary and Commercial Bank had insurable interests in the property. *See State Farm and Cas. Co. v. Liggett*, 236 Kan. 120, 689 P.2d 1187, 1192 (1984) (explaining that a mortgagee has an interest in insurance proceeds). Even when accepted as true, the allegations of plaintiffs' complaint do not establish that plaintiffs had any ownership interest in the January 2019 insurance proceeds such that Commercial Bank would have violated any duty of care to plaintiffs by refusing to release those proceeds directly to them.

The remainder of plaintiffs' allegations in Count 1 also fail to state a cognizable claim for negligence against Commercial Bank. Plaintiffs argue that Commercial Bank actively provided misleading information to an insurance company, advised or colluded with a customer to withhold overages, failed to properly return overages to plaintiffs' lender, and exerted unauthorized control over settlement refunds and overages with the intent to permanently deprive the plaintiffs of that money. These are all claims of

intentional misdeeds that cannot support a claim of negligence. *See Molitor v. Mixon*, 2016 WL 9050778 at *2 (W.D. Okla. November 21, 2016); *Aguire Heras v. Corrections Corp. of America*, 2019 WL 239271 at *2 (D. N.M. March 18, 2019) (both noting that allegations of intentional conduct cannot turn intention tort claims into a negligence cause of action). To the extent plaintiffs claim Commercial Bank owed them a duty of care because they were customers of the bank, the allegations of the Complaint show that relationship did not arise until plaintiffs opened an account with the Bank in August 2020, after the events that plaintiff deems to be negligence occurred.

The court consequently dismisses the claims in Count 1 as to all defendants.

*Count 2: Defamation (as to defendants Wary and Brake)*

Plaintiffs mention two defendants in their Count 2 claims: Brake and Wary. As to defendant Brake, plaintiffs' claims cover the period of time between July 9 and 10, 2020 where Brake was communicating with plaintiffs and others concerning plaintiffs' new mortgage on the property. Plaintiffs contend that Brake communicated non-public, personal information about them to Realty Inc. with "actual malice," that she falsely reported to Wary that plaintiffs had no closing scheduled, that she berated, demeaned, and insulted Mr. Smith in front of other customers at Commercial Bank, and that her actions exposed plaintiffs to public contempt and ridicule. As to defendant Wary, plaintiffs contend that Wary falsely reported to police that plaintiffs were harassing her, repeated those false statements to her employer and to her attorney, and also made false

statements to others that plaintiffs had been dishonest in their real estate transaction with Wary.

Plaintiffs cite Kan. Stat. Ann. § 21-4004 and 21-6103 in support of their contentions. Kan. Stat. Ann. § 21-4004 was repealed prior to the conduct complained of by plaintiffs. Kan. Stat. Ann. § 21-6103 applies to "criminal false communication" and is inapplicable to this civil action. Under Kansas law, a defamation claim requires (1) false and defamatory words, (2) communicated to a third person, (3) which resulted in harm to plaintiffs' reputation. *Hall v. Kan. Farm Bureau*, 274 Kan. 263, 276, 50 P.3d 495 (2002). In addition, a plaintiff in a defamation action must plead and prove actual damages to his reputation, and cannot presume damage. *Garcia v. Tyson Foods, Inc.*, 890 F.Supp.2d 1266, 1271 (D. Kan. 2012) (quoting *Wright v. Bachmurski*, 29 Kan.App.2d 595, 29 P.3d 979 (2001)). "[G]eneric allegations of reputational injury are insufficient to meet the requirement of Fed. R. Civ. P. 9(g) that claims of special damage must be definitely alleged." *Id.* (citing *Woodmont Corp. v. Rockwood Ctr. Partnership*, 811 F.Supp. 1478, 1484 (D. Kan. 1993) (finding the existence of special damages to be an "essential element" of plaintiff's claim for relief in defamation action)).

Plaintiffs' allegations fail to state a claim for relief against defendant Brake for defamation. Plaintiffs allegations that Brake shared "private" information about them during the refinance process do not identify that any information shared was false, or that it caused any actual damage to their reputation. Defendants correctly point out that as a practical matter, Brake and other employees of Commercial Bank would have had access to the details of the financial transaction, because Commercial Bank held the

mortgage that was going to be paid off by plaintiffs' loan. At best, plaintiffs' allegations show that Brake was mistaken as to certain details of the transaction, but mistaken communications do not amount to defamation. Plaintiffs' allegations that Brake publicly demeaned and berated them are unspecific and do not show that Brake used any false or defamatory language. Finally, plaintiffs do not plead sufficient allegations to show they suffered actual damages as a result of Brake's alleged conduct. Plaintiffs were able to obtain financing and close the loan on schedule. Plaintiffs' contention that they were exposed to public contempt and ridicule are the sort of vague, conclusory allegations this court has previously indicated cannot support a defamation claim.

Plaintiffs' allegations as to Wary similarly fail to state a claim for defamation. Even accepting as true plaintiffs' allegation that Wary submitted a false report of harassment to Oswego police, plaintiffs' Complaint indicates the Oswego chief of police deemed Wary's story not credible, and no actual report was filed. Plaintiffs do not claim they have lost opportunities to shop or do business in the community as a result of Wary's communications with her employer. Finally, the fact that Wary had confidential communications with her counsel that led to counsel sending a demand letter to plaintiffs cannot form the basis of a claim for defamation, because there is no indication the contents of Wary's demand letter were shared anywhere other than between Wary's counsel and plaintiffs.

The court consequently dismisses Count 2 of the Complaint as to all defendants.

*Count 3: Extortion (as to Commercial Bank and Wary)*

16

Plaintiffs' Count 3 claims that defendant Commercial Bank extorted plaintiffs by refusing to release the January 2019 insurance settlement for repair of the roof, thus forcing plaintiffs to refinance the loan when plaintiffs were under no particular obligation to do so. Plaintiffs cite to K.S.A. § 21-5428, which defines the crime of blackmail. The crime of extortion is defined in K.S.A. § 21-6501, but plaintiffs as private citizens do not have a civil cause of action under the criminal code. *See Brooks v. Sauceda,* 85 F.Supp.2d 1115, 1128 (D. Kan. 2000) (declining to create a private cause of action for violations of the Kansas criminal code). Moreover, a statement enforcing or threatening to enforce one's legal rights is not extortion. *Booth v. Electronic Data Systems Corp.,* 799 F.Supp. 1086, 1093 (D. Kan. 1992) (finding that defendant's attempts to collect on a promissory note by contacting plaintiff and a credit agency were not extortion, even if it was improper for defendant to withhold a release of a noncompete agreement until plaintiff acknowledged liability for the note). Here, plaintiffs' allegations fail to establish that plaintiffs had any ownership right in the insurance proceeds prior to the date they refinanced the mortgage. Wary owned the insurance policy in question and Commercial Bank held the mortgage on the property, and therefore held a beneficial interest in the insurance proceeds. Commercial Bank's refusal to release the insurance proceeds to plaintiffs was a statement enforcing its legal rights.

The court consequently dismisses Count 3 as to all defendants.

*Count 4: Collusion (as to Commercial Bank and Wary)*

Plaintiffs in Count 4 contend that Commercial Bank and Wary "agreed to commit an act prohibited by law," because they "knew or should have known" that releasing the January 2019 insurance funds to Wary, who had no interest in the property and who did not use the funds to repair the roof, was "fraudulent." (Dkt. 1, p. 11). In support, plaintiffs cite K.S.A. § 21-5302, the Kansas criminal conspiracy statute. Again, plaintiffs have no private cause of action under the Kansas criminal code. *See Brooks*, 85 F.Supp.2d at 1128.

To the extent that plaintiffs' allegations could be construed as a common law claim for fraud, they fail to state a claim with the required particularity. Under Kansas law, a fraud claim requires clear and convincing proof that (1) false statements were made as a statement of existing and material fact; (2) the party making the statements knew them to be false or made them recklessly without knowledge concerning them; (3) the party making the statements made them intentionally for the purpose of inducing another party to act on them; (4) the other party reasonably relied and acted on the representations; and (5) the other party sustained damages by relying upon the statements. *Kelly v. VinZant*, 287 Kan. 509, 515, 197 P.3d 803 (2008). Plaintiffs' Count 4 does not identify that any false statements were made by Commercial Bank or Wary to plaintiffs concerning the insurance proceeds. There are no allegations establishing that Commercial Bank had any interest in forcing plaintiffs to refinance or would have obtained any benefit from forcing plaintiffs to refinance. There is also no indication that plaintiffs sustained damages solely because they relied upon false statements made by Commercial Bank or Wary concerning the insurance proceeds.

The court consequently dismisses Count 4 as to all defendants.

*Count 5: Insurance Fraud (as to Commercial Bank and Wary)*

Count 5 of plaintiffs' complaint alleges that Commercial Bank and Wary engaged in "fraudulent insurance actions" by (1) withholding the January 2019 insurance proceeds from plaintiffs; (2) releasing those funds to Wary knowing she no longer had an ownership interest in the property; (3) colluding with Wary to use the insurance proceeds to force plaintiffs to refinance, rather than using them to repair the roof; (4) continuing to advise Wary over the course of a year to "extort" plaintiffs rather than use the funds to repair the roof; and (5) by knowingly making false statements to the insurance company to conceal the fact the money had been released to Wary, rather than placed in a "disaster fund." (Dkt. 1, p. 11-12). Plaintiffs contend these actions violated K.S.A. § 40-2,118.

K.S.A. § 40-2,118(a) defines a "fraudulent insurance act" as

> an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

Even if plaintiffs' allegations concerning communications between Commercial Bank and the insurance company could be construed as alleging acts that fall within that statute, enforcement of § 40-2,118 and other portions of the Kansas Insurance Code is reserved for the criminal anti-fraud division of the Kansas Insurance Department and the State's

Attorney General or the county or district attorney. *See* K.S.A. §40-113; 40-2,118(e) (defining a fraudulent insurance act as a felony subject to the state's criminal sentencing guidelines). Plaintiffs do not have a private cause of action for enforcement of the insurance code. *See Brooks*, 85 F.Supp.2d at 1128.

Similarly, as discussed with respect to Count 4, plaintiffs allegations fail to state a claim of common law fraud. Even if Commercial Bank or Wary had made false statements to Commercial Insurance Company, plaintiffs' allegations fail to show with specificity how plaintiffs would have relied upon any false statements to their detriment.

The court consequently dismisses Count 5 as to all defendants.


*Count 6: Disclosure of Non-Public Personal Information to Non-Affiliated Third Persons (as to Commercial Bank and Wary)*

Plaintiffs' Count 6 alleges that defendants Wary and Commercial Bank violated Title V of the Gramm-Leach-Bliley Act (GLBA), 15 U.S.C. §§ 6801-09 and the "Privacy Rule" when they had conversations regarding plaintiffs' "nonpublic personal or financial information." (Dkt. 1, p. 12). That "nonpublic" information includes discussions of "payoff overages" and escrowed tax and insurance payments involved in the refinancing transaction; plaintiffs contend those amounts should not have been disclosed to Wary.

The GLBA enforcement provision provides that it "shall be enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission." 15 U.S.C. § 6805(a). The GLBA does not create a private cause of action. *See Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960

(8th Cir. 2007) ("[n]o private right of action exists for an alleged violation of the GLBA."). Even if plaintiffs' allegations fell within the GLBA's prohibitions, then, plaintiffs would have no cause of action under its provisions.

The court consequently dismisses Count 6 as to all defendants.

*Count 7: Unlawful Racial Discrimination (as to Wary, Commercial Bank)*

Plaintiffs' Count 7 alleges that defendants Wary and Commercial Bank engaged in unlawful racial discrimination in violation of "both Federal and State civil rights acts." (Dkt. 1, p. 12-13). Plaintiff specifically cites the "Civil Rights Act of 1964" in reference to Count 7, but elsewhere in the Complaint indicate their claims of discrimination arise under 42 U.S.C. § 1983. They contend that Wary has persistently acted to give members of the community, including employees at Commercial Bank, the impression that she has been harmed by plaintiffs, and that Commercial Bank has consistently failed to address or remedy specific allegations by plaintiffs of mistrust and discrimination. Plaintiffs contend these actions can be motivated by nothing but racial animosity.

Plaintiffs cannot state a claim for relief under 42 U.S.C. § 1983 as to Commercial Bank or Wary.[9] 42 U.S.C. § 1983 applies only to conduct occurring "under color of law." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting 42 U.S.C. § 1983). The statute's requirement that a defendant act "under color of state law"

---

[9] Chief Judge Robinson dismissed similar claims of unlawful racial discrimination in her April 20, 2021 Memorandum and Order in related Case No. 20-2517-JAR-TJJ, *Smith et al. v. G&W Foods, et al.*

is a jurisdictional requirement that cannot be waived. *See Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citations omitted). Here, there are no allegations that Wary, Commercial Bank, or any other defendant in this action were acting under color of state law when they engaged in the conduct described in plaintiffs' complaint, nor could plaintiffs credibly make any such allegations.

To the extent that plaintiffs contend 28 U.S.C. § 1343 provides a basis for their claims, the court similarly rejects those arguments. Section 1343 grants federal district courts jurisdiction to hear civil rights cases, but does not specifically provide a private cause of action. *See* Dkt. 33, Case No. 20-2517-JAR-TJJ (citing *Fisher v. Lynch*, 531 F.Supp.2d 1253, 1270 (D. Kan. 2008) (citing 28 U.S.C. § 1343 and *Lewis v. Stevenson*, 123 Fed. App'x 885, 886 (10th Cir. 2005)). It does, however, describe categories of actions that may be brought in federal court, including an action "to recover damages or secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." *Id.* (quoting 28 U.S.C. § 1343(a)(3)).

As in the related case, plaintiffs' allegations here fail to state a claim for denial of equal protection or racial discrimination. Plaintiffs do not allege that Commercial Bank or any of its employees denied them a service; in fact, plaintiffs' allegations note they were able to open an account at Commercial Bank and were able to discuss concerns with a Commercial Bank's branch manager. The allegations that plaintiffs' race played a role in negative interactions between plaintiffs and defendants are purely conclusory and do not give rise to any plausible inference that plaintiffs were denied equal treatment or privileges under the law based upon their race.

Consequently, the court dismisses Count 7 as to all defendants.

*Count 8: Bank Misconduct (Commercial Bank, Brake, Wary)*

Plaintiffs' Count 8 alleges "bank misconduct," but fails to cite any statutory or common law source for that cause of action. Plaintiffs' claims center around their allegation that they or their lender were entitled to "pay-off overages" and "pre-paid escrow refunds" and that defendants Brake, Wary, and Commercial Bank "conspired" to keep these amounts from plaintiffs. (Dkt. 1, p. 13). Notably, the Complaint indicates "Plaintiff/s *find Commercial Bank [defendant] is wholly responsible* for the return of these overages, *not defendant Wary*." (Dkt. 11, p. 13) (emphasis added).

Plaintiffs' Complaint itself forecloses any claims against the Commercial Bank defendants for failure to disburse any such amounts to them or their lender at the closing of plaintiffs' loan. The allegations of plaintiffs' Complaint show that at the time plaintiffs and Wary entered into their agreement, Wary had a promissory note secured by a mortgage on the property, and Commercial Bank held that mortgage. Plaintiffs' arrangement with Wary did not change the contractual relationship between Wary and Commercial Bank; both Wary and Commercial Bank were bound by the obligations in the contractual agreement(s) between them, which are not attached to plaintiffs' Complaint. Commercial Bank was not a party to Wary and plaintiffs' transaction, and had no other contractual relationship with plaintiffs related to the property at issue in the Complaint. As to the promissory note and mortgage between Wary and Commercial Bank, their only recourse for breach of that agreement would have been against each

other. And, if Commercial Bank owed any obligations as a result of that relationship, including an obligation to refund amounts that were overpaid when the mortgage was paid off, those obligations were owed to Wary, not to plaintiffs. *See, e.g.,* 12 U.S.C. § 2605 (requiring that any balance in an escrow account within a bank's control at the time a mortgage loan is paid off be promptly returned to the borrower, or credited to a similar account for a new mortgage loan to the borrower with the same lender).

To the extent plaintiffs have any legitimate interest in the amounts they variously characterize as "payoff overages" or "prepaid escrow" or "escrow refunds," their claims arise solely out of the contractual relationship between plaintiffs and Wary. Because plaintiffs do not attach the real estate agreement with Wary to the Complaint, the court cannot determine how that agreement would treat the amounts in question. Plaintiffs, however, indicate that they do not hold Wary responsible with respect to these amounts. *See* Dkt. 11, p. 13 ("Plaintiff/s find Commercial Bank [defendant] is wholly responsible for the return of these overages, not defendant Wary.").

Consequently, the court dismisses Count 8 as to defendants Commercial Bank, Brake, and Wary.


*Count 9: Deceptive Acts & Practices (Commercial Bank)*

Count 9 alleges that defendant Commercial Bank's failure to "acknowledge or act upon [plaintiffs] grievances of discrimination, fraudulent insurance action, defamation, extortion, negligence, privacy violations, and bank misconduct" constitutes a deceptive

act or practice in violation of the Kansas Consumer Protection Act (KCPA).[10] The KCPA, K.S.A. § 50-634 states, in part, "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Commercial Bank, as a federally regulated banking institution, cannot be a "supplier" under the KCPA. *See Kalebaugh v. Cohen, McNeile & Pappas, P.C.,* 76 F.Supp.3d 1251, 1260 (D. Kan. 2015); *Ellis v. Chase Bank USA, NA,* 2017 U.S. Dist. Lexis 183866 at *9 (D. Kan. Nov. 7, 2017) (granting Motion to Dismiss because defendant bank was not a supplier under the Act).

The court consequently dismisses Count 9.

D.    *Plaintiffs' Request for Alternative Relief*

Plaintiffs' reply in opposition to defendants' Motion to Dismiss (Dkt. 22) requests that if the court concludes they have not pled a plausible claim for relief, that they be allowed to re-plead the claim pursuant to Fed. R. Civ. P. 12(e). The court finds defendants' suggestion that plaintiffs mean Rule 15 rather than 12(e) to be plausible. (*See* Dkt. 23, p. 6). Nevertheless, plaintiffs' briefs in opposition to defendants' motions to dismiss fail to show that amendment of their pleadings would remedy the deficiencies in their legal claims, and the court finds in several instances (such as those in which plaintiffs base their claims upon criminal statutes) that amendment of the pleadings would be futile. In addition, allowing plaintiffs to amend their pleadings at this late stage of the proceedings, after substantial briefing on motions to dismiss, would be contrary to the purpose and

---

[10] Count 9 mentions only Commercial Bank; therefore, the court construes it as a claim only against defendant Commercial Bank and no other party.

intent of Rule 15. *See Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (affirming dismissal of complaint where plaintiff requested leave to amend in a footnote in a response to a motion to dismiss because "[p]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the Complaint and then an opportunity to cure those deficiencies.").

The court consequently denies plaintiffs' request for leave to amend the pleadings following the court's order on this Motion to Dismiss.

E.    *Plaintiffs' Motion for Preliminary Injunction*

Plaintiffs filed a Motion for Preliminary Injunction on April 25, 2021 in both this and related case 20-2517-JAR-TJJ, subsequent to the court's ruling in the related case dismissing defendant G&W Foods from the matter. (Dkt. 35). Plaintiffs claim that after the court's ruling Wary engaged in "microaggressive racial behavior" towards them while they shopped in G&W Foods, and they request that Wary be restrained from treating plaintiffs differently on the basis of race than other similarly situated customers.

A party seeking a preliminary injunction must satisfy a four-factor test. The party must show (1) a substantial likelihood of prevailing on the merits; (2) that it will suffer irreparable harm unless the preliminary injunction is issued; (3) that the threatened injury outweighs the harm the injunction might cause to the opposing party; and (4) that the preliminary injunction will not adversely affect public interest. *Prairie Bank of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). For the reasons set forth above, the court finds that plaintiffs cannot show a substantial likelihood of prevailing on the merits

of this case. It is therefore unnecessary to address the remaining prongs of the four-factor test, and plaintiffs' Motion for Preliminary Injunction must be denied.

IV.     Conclusion

For the reasons set forth above, the court finds the following:

1.     The Commercial Bank Defendant's Motion to Dismiss (Dkt. 18) is GRANTED;

2.     Defendant Patricia Wary's Motion in Support of the Motion to Dismiss (Dkt. 25) is DENIED as moot;

3.     Defendant Patricia Wary's Motion for Judgment on the Pleadings is DENIED;

4.     Plaintiffs' Motion for Preliminary Injunction is DENIED.

IT IS SO ORDERED this 29th day of April, 2021.

/s/J. Thomas Marten
THE HONORABLE J. THOMAS MARTEN
UNITED STATES DISTRICT COURT